1  KENNETH G. PARKER (SBN 182911)
       kenneth.parker@haynesboone.com
2  ROBIN H. ROUNAGHI (SBN 171251)
       robin.rounaghi@haynesboone.com
3  HAYNES AND BOONE, LLP
   18100 Von Karman Avenue, Suite 750
4  Irvine, California 92612
   Telephone:  (949) 202-3014
5  Facsimile:  (949) 202-3114

6  THOMAS F.A. HETHERINGTON*
       tom.hetherington@emhllp.com
7  COURTNEY L. SCANTLIN
       courntey.scantline@emhllp.com
8  JARRETT E. GANER*
       jarrett.ganer@emhllp.com
9  EDISON, MCDOWELL & HETHERINGTON LLP
   3200 Southwest Freeway, Suite 2920
10 Houston, Texas 77027
   Telephone:  (713) 337-5580
11 Facsimile:  (713) 337-8850

12 Attorneys for
   PHL VARIABLE INSURANCE CO.
13 *Pro hac vice to be filed

14                UNITED STATES DISTRICT COURT

15                EASTERN DISTRICT OF CALIFORNIA

16 PHL VARIABLE INSURANCE CO.,          Case No.

17               Plaintiff,

18        v.                            **PLAINTIFF PHL VARIABLE
                                        INSURANCE COMPANY'S
19 KRISTIAN GIORDANO; and THE           ORIGINAL COMPLAINT**
   BRITT-MARIE JOHNSON FAMILY
20 INSURANCE TRUST, by and through
   its trustee, KASRA SADR, and DOES
21 1–10,

22               Defendants.

23

24

25

26

27

28                                1

                          COMPLAINT

PHL Variable Insurance Company, by and through it attorneys, files this Original Complaint against Kristian Giordano and The Britt-Marie Johnson Family Insurance Trust by and through its Trustee, Kasra Sadr as follows:

## I.    INTRODUCTION

1.    This is an action for declaratory judgment under 29 U.S.C. § 2201, fraud, conspiracy, negligent misrepresentation, and breach of contract stemming from the fraudulent procurement of a four million dollar insurance policy on the life of Britt-Marie Johnson ("Ms. Johnson") (the "Policy").

2.    In recent years, a derivative market for life insurance has developed in which existing life insurance policies are sold to third parties who lack an insurable interest in the life of the insured.  Typically referred to as a "life settlement" or "senior settlement," these sales are generally lawful, assuming that the policy was procured for legitimate purposes and that there was an insurable interest at the policy's inception.

3.    As this derivative market has developed; however, there has been a proliferation of life insurance policies that are not sought for legitimate insurance needs but rather for re-sale to strangers in the secondary market.  Policies procured under these circumstances have become known as stranger originated life insurance ("STOLI") policies.  STOLI policies are illegal wagering contracts that lack an insurable interest at inception. As such, STOLI policies are void *ab initio*.

4.    In many cases, STOLI policies are initiated with fraudulent representations in the insurance application.  Insurers, in an effort to prevent issuing STOLI policies, require insurance applicants and insurance agents to respond to specific questions during the application process regarding the purpose of the insurance sought.  STOLI promoters will falsely answer these questions in order to obtain the insurance sought.  Additionally, in order to maximize their profit, STOLI

COMPLAINT

1 | promoters frequently provide insurers with false information regarding an insured's

2 | financial status to obtain a policy with a larger face amount.  In some cases, insureds

3 | are unaware of the misrepresentations made on the application and during the

4 | application process.

5 |      5.    STOLI schemes have become so prevalent that they have been the

6 | subject of consumer fraud alerts issued by numerous state insurance departments,

7 | including the California Department of Insurance.[1]

8 |      6.    In furtherance of a STOLI scheme, insurance producer Kristian

9 | Giordano ("Giordano") procured the Policy from Phoenix.  In doing so, Giordano

10 | made numerous fraudulent misrepresentations relating to Ms. Johnson's bona fide

11 | insurance need for the Policy, the purpose of the Policy, the funding source of the

12 | Policy, and the intent for investors to obtain an interest in the Policy.

13 |      7.    Phoenix brings this action for rescission of the Policy and an order

14 | declaring the Policy void *ab initio*, and seeks money damages against the

15 | Defendants.

16 | ## II.  PARTIES

17 |      8.    Plaintiff, PHL Variable Life insurance Company ("Phoenix") is a

18 | corporation organized under the laws of the State of Connecticut and maintains its

19 | principle place of business in the State of Connecticut.  Phoenix's headquarters is

20 | located at One American Row, Hartford, Connecticut 06102-5056.  Phoenix's high

21 | level officers direct, control, and coordinate the corporation's activities from

22 | Hartford, Connecticut.  As such, Phoenix is a citizen of Connecticut within the

23 |

24 |

25 | [1] Cal. Dep't of Ins., Seniors: Senior Advisory on STOLI or SPINLIFE Life

26 | Insurance Schemes, *available at* http://www.insurance.ca.gov/0150-seniors/0100alerts/strangerownedlifeins.cfm; http://www.insurance.ca.gov/0150-seniors/0100alerts/upload/SA0108Stoli2.pdf.

27 |

28 |

COMPLAINT

meaning and intent of 28 U.S.C. § 1332. Phoenix is authorized to transact the business of insurance in California.

9. Defendant, The Britt-Marie Johnson Family Insurance Trust (the "Trust"), is a trust organized under the laws of California and is a citizen of California within the meaning and intent of 28 U.S.C. § 1332. The Trust may be served through its Trustee, Kasra Sadr ("Trustee"), at 401 West A Street Suite #1815, San Diego, California, 92101. Upon information and belief, Trustee Sadr is the Trust's sole trustee and is a citizen of California.

10. Defendant, Kristian Giordano, is a California resident and citizen. Upon information and belief, he may be served at 40801 Carlena Lane, Temecula, California, 92591-2127.

11. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants Does 1-10, inclusive, are unknown to Phoenix at this time, who therefore sue said Defendants by such fictitious names, and when the true names and capacities of said Defendants are ascertained, Phoenix will seek leave from the Court to amend this Complaint accordingly. Phoenix is informed and believes and therefore alleges that each of the Defendants designated herein as a Doe is responsible in some manner for the events and happenings herein referred to, and caused damages to Phoenix proximately thereby as herein alleged.

### III.   <u>JURISDICTION AND VENUE</u>

12. This Court has jurisdiction over all parties of this lawsuit under 28 U.S.C. § 1332(a)(1) because Phoenix and Defendants are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of attorneys' fees, interest and costs. Defendants are subject to the personal jurisdiction of this Court.

13. This Court has jurisdiction for the declaratory judgment action pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §§2201 and 2202, that grant the United States

COMPLAINT

District Courts jurisdiction to declare the "rights and other legal relations of any interested party making such declaration, whether or not further relief is or could be sought."

14.     Venue is proper for this action pursuant to 28 U.S.C. § 1391, since Giordano is a citizen of California, the Trust is a citizen of California, its Trustee is located in California, and the insurance policy at issue is governed by California law.

## IV.   **FACTUAL BACKGROUND**

15.     Phoenix is, and during all relevant times has been, in the business of underwriting and issuing policies of life insurance and is authorized to transact the business of insurance in the State of California.

16.     Giordano is an independent life insurance producer.   As such, he solicits applications for life insurance policies on behalf of numerous insurance carriers. Giordano is neither an employee nor a career agent of Phoenix.

17.     Giordano entered into an Independent Producer Contract with Phoenix (the "Producer Contract").  The Producer Contract sets out the terms of Giordano's relationship with Phoenix as an Independent Producer.  Among other terms, the Producer Contract requires that Giordano provide complete and accurate answers on all insurance applications and associated forms and that Giordano provide Phoenix with all information necessary to underwrite applications solicited by Giordano. Further, the Producer Contract requires that a Producer not accept any payment unless the insurance applicant is, at the time of delivery, in good health and in insurable condition as originally represented.

18.     Upon information and belief, Ms. Johnson, a resident of Utah, was approached by a family member regarding the opportunity to obtain free life insurance on her life.  This family member placed Ms. Johnson in contact with

COMPLAINT

Giordano.  Once introduced, Giordano offered Ms. Johnson the opportunity to obtain free life insurance.  Further, Giordano represented to Ms. Johnson that she would never have to pay the premiums on the policy and that she would receive a payment from the policy after two years.  Upon Ms. Johnson's acceptance, Giordano then caused the Trust to be established with the intent that the Trust would own the Policy on behalf of STOLI investors.

19.    Upon information and belief, the Trust, by and through its Trustee, then submitted a written application to Phoenix seeking the issuance of an insurance policy, insuring the life of Ms. Johnson (the "Application").  As part of the underwriting process, along with the Application, the Trust, by and through its Trustee, also submitted a Statement of Client Intent form (the "SOCI"), which misrepresented Ms. Johnson's bona fide need for the insurance policy and the means by which the policy would be funded.

20.    The Application and SOCI requested material information regarding, among other things, the purpose of the insurance, the source of funding for the insurance premiums, and any intent or understanding that a third-party would obtain an interest in the policy.  In response to these questions, the Application and SOCI represented that the insurance was sought for estate planning purposes; that premiums would not be financed, that no individual or entity other than Ms. Johnson would pay the premiums; and that there was no understanding that the policy would be sold to a third-party.[2]   As discussed more fully below, each of these representations was false and was material to Phoenix's acceptance of the risk assumed.

---

[2] Specifically, questions 1 and 9 in Section XI of the Application and questions 1, 2, 3, 4, 7 and 8 on the Statement of Client Intent form were answered incorrectly.

COMPLAINT

21.   In submitting the Application and SOCI to Phoenix, Ms. Johnson, Giordano and the Trust knew that each was required to provide complete, accurate and honest answers to the questions presented on the Application and SOCI. Ms. Johnson, Giordano and the Trust also knew that Phoenix would rely upon the answers recorded on the Application and SOCI in determining whether Ms. Johnson was insurable and qualified for the insurance sought through the Application.

22.   The Application contained the following affirmations:

> I have reviewed this application and the statements made herein and those of the proposed insured and all such statements made by the proposed insured in Part I or and in Part II of this application are full, complete and true to the best knowledge and belief of the undersigned and have been correctly recorded.

* * *

> The Producer hereby confirms he/she has truly and accurately recorded on the application the information supplied by the Proposed Insured . . .

Ms. Johnson, Giordano and the Trust, through its Trustee, executed the Application on February 7, 2008.

23.   The SOCI contained the following affirmations:

> As a matter of public policy and to protect the interests of our existing policyholders, our shareholders and our industry, Phoenix will not knowingly participate in sales programs or strategies, including premium financing arrangements, designed primarily to facilitate the eventual sale or transfer of the policy to investors. The purpose of this form is to provide Phoenix with the information it needs to implement that policy. Any misstatement or concealment will be treated as a

1      material misrepresentation for which Phoenix may seek any and all
2      sanctions available to it.

3                                        ***

4      By signing below, the undersigned declare and certify that the
5      information contained in the Statement of Client Intent is true, correct
6      and complete to the best of their knowledge, information and belief.
7      The undersigned further declare that each of them understand,
8      acknowledge and agree that Phoenix is relying on the information
9      contained in this Statement of Client Intent in making its determination
10     to issue the policy applied for and that the statements contained herein
11     shall continue to be true, correct and complete as of the time of issuance
12     and delivery of the policy. . .

13     Ms. Johnson, Giordano and the Trust, through its Trustee, executed the SOCI
14     on February 7, 2008.

15     24.    Based upon the statements and representations on the Application and
16     SOCI, Phoenix issued life insurance policy number 97527973 to the Trust, with an
17     effective date of March 31, 2008.  The Policy's death benefit is $4,000,000.

18     25.    Upon information and belief, Giordano was aware Ms. Johnson would
19     not be the funding source for the premiums but falsely represented that Ms. Johnson
20     would be the sole premium source on the SOCI in order to obtain the Policy.

21     26.    Upon information and belief, neither Ms. Johnson nor any party with an
22     insurable interest in her life funded the payment of premiums on the Policy.

23     27.    Had Giordano and the Trust provided accurate responses on the
24     Application and SOCI, Phoenix would not have issued the Policy or would have
25     done so on materially different terms.  As a result of the Policy's issuance, Phoenix

26
27
28

COMPLAINT

has suffered damages, including but not limited to commissions Phoenix paid to Giordano that it would not have paid, but for the sale.

28.     Phoenix brings this action seeking rescission of the Policy, and an order declaring the Policy void *ab initio*.

29.     Further, Phoenix is also entitled to an award of punitive damages based on the wanton, malicious, deliberate and/or grossly negligent conduct of Giordano as described herein.

## V.     CAUSES OF ACTION

### COUNT I:  DECLARATORY JUDGMENT:
### RESCISSION DUE TO MATERIAL MISREPRESENTATION
### (As to the Trust)

30.     Phoenix incorporates herein by reference each of its allegations contained in Paragraphs 1–29 above.

31.     Pursuant to the federal Declaratory Judgment Statute, 28 U.S.C. § 2201, Phoenix seeks a declaratory judgment that the Policy is null, void and rescinded *ab initio* due to the fraudulent and/or material misrepresentations and omissions made on the Application and SOCI, and that as a result of said rescission, Phoenix may deposit with the Clerk of the Court all premiums paid on the Policy along with required interest, if any, pending further dispensation by the Court.

32.     Phoenix seeks a declaratory judgment that, pursuant to Section 483(c) of the California Insurance Code, the Trust is not entitled to a return of the Policy premiums due to actual fraud.  Alternatively, Phoenix seeks a declaratory judgment that Phoenix be allowed to offset from the Policy premiums an amount equal to the commissions paid to Giordano or additional sales representatives arising out of or relating to the sale of the Policy, other costs associated with the Policy, as well as its attorneys' fees and expenses.

COMPLAINT

33.   Phoenix also seeks its fees pursuant to the Federal Declaratory Judgment Statute.

34.   To the extent required by law, Phoenix fully and unconditionally tenders the Policy's premiums to the Court's registry.

## COUNT II: DECLARATORY JUDGMENT:
## RESCISSION – LACK OF INSURABLE INTEREST
### (As to the Trust)

35.   Phoenix incorporates herein by reference each of its allegations contained in Paragraphs 1–34 above.

36.   Pursuant to the federal Declaratory Judgment Statute, 28 U.S.C. § 2201, Phoenix seeks a declaratory judgment that the Policy is null, void and rescinded *ab initio* due to the lack of insurable interest.  The Policy was purchased with the intent to benefit a third party, which lacked the requisite insurable interest in Britt-Marie Johnson's life at the time of issuance.  The Policy's issuance violates the letter and spirit of California and Utah law on insurable interest and is inconsistent with both states' public policy of prohibiting the wagering on the lives of others.   The application for and the purported ownership of the Policy by the Trust is merely a sham transaction intended to circumvent and violate applicable insurable interest laws and public policy.  The Policy is, therefore, void *ab initio* and is of no force and effect from its inception.

37.   Phoenix seeks a declaratory judgment that the Policy is null, void and rescinded *ab initio* due to the lack of insurable interest and that as a result of said rescission, Phoenix may deposit with the clerk of the Court all premiums paid on the Policy along with required interest, if any, pending further dispensation by the Court.

COMPLAINT

38.   Phoenix seeks a declaratory judgment that, pursuant to Section 483(c) of the California Insurance Code, the Trust is not entitled to a return of the Policy premiums due to actual fraud.   Alternatively, Phoenix seeks a declaratory judgment that Phoenix be allowed to offset from the Policy premiums an amount equal to the commissions paid to Giordano or other sales representatives arising out of or relating to the sale of the Policy, other costs associated with the Policy, as well as its attorneys' fees and expenses.

39.   Phoenix also seeks its fees pursuant to the Federal Declaratory Judgment Statute.

40.   To the extent required by law, Phoenix fully and unconditionally tenders the Policy's premiums to the Court's registry.

## COUNT III: FRAUD

### (As to all Defendants, including Does 1–10)

41.   Phoenix incorporates herein by reference each of its allegations contained in Paragraphs 1–40 above.

42.   The Trust and Giordano procured the Policy for the purpose of selling it in the secondary market.   As stated above, upon information and belief, Giordano and the Trustee made fraudulent misrepresentations regarding, among other things, the true purpose of the Policy and the true source from which the Policy's premiums would be paid.   Giordano and the Trust intended that Phoenix rely on these misrepresentations in issuing the Policy.

43.   Each fraudulent misrepresentation was material to Phoenix's decision to issue the Policy and Phoenix justifiably relied on these fraudulent misrepresentations in issuing the Policy.   Indeed, Phoenix would not have issued the Policy had it known the true facts surrounding it.

COMPLAINT

44.  Phoenix has incurred substantial damages as a result of the wrongful conduct of Giordano and the Trustee, including, but not limited to, costs and expenses associated with the issuance of the Policy.

45.  Phoenix is also entitled to an award of punitive damages based on the wanton, malicious, deliberate and/or grossly negligent conduct of Giordano and the Trustee as described herein.

## COUNT IV: CIVIL CONSPIRACY

### (As to all Defendants, including Does 1–10)

46.  Phoenix incorporates herein by reference each of its allegations contained in Paragraphs 1–45 above.

47.  Defendants and others, including Does 1–10, conspired and agreed to commit fraud to induce Phoenix to issue the Policy by, among other things, participating in, facilitating and/or directing the: (i) solicitation of Ms. Johnson's participation in a STOLI arrangement; (ii) submission of the Application for the Policy to Phoenix, which Defendants knew lacked an insurable interest; (iii) establishment of the Trust to conceal the absence of an insurable interest in connection with the Policy; (iv) concealment from Phoenix that there was a lack of insurable interest at the inception of the Policy; and (v) falsifying representations concerning the source from which the Policy's premiums would be paid.

48.  In furtherance of their collaborative and conspiratorial agreement to commit a fraud against Phoenix, Defendants knowingly and purposefully concealed the lack of any insurable interest in connection with the procurement of the Policy and knowingly and purposefully placed false information on the Application for the Policy and the SOCI to induce Phoenix to issue the Policy.  At all times material hereto, Defendants acted in furtherance of a common plan, scheme or design intended to benefit them and profit from the scheme at Phoenix's expense.

12

COMPLAINT

49.   Defendants knew of their own concealment, and that of their co-conspirators, regarding the lack of insurable interest and the fraudulent misrepresentations made in connection with the Policy.   Further, each knew that Phoenix would rely on these acts in determining whether to issue the Policy. Defendants furthered this conspiracy by, among other things, concealing the lack of insurable interest in the Policy and by providing false information on the Application for the Policy and the SOCI and/or failing to correct the false information.

50.   Phoenix has incurred substantial damages as a result of Defendants' wrongful conduct, including but not limited to, the payment of commissions and the Policy's acquisition and maintenance costs.

## COUNT V: NEGLIGENT MISREPRESENTATION

### (As to all Defendants, including Does 1–10)

51.   Phoenix incorporates herein by reference each of its allegations contained in Paragraphs 1–50 above.

52.   Defendants supplied false information to Phoenix in submitting the Application for the Policy and the SOCI, which constituted a transaction in which each Defendant had a pecuniary interest.   Further, Defendants owed a duty to Phoenix and failed to exercise reasonable care in making the representations. Additionally, or alternatively, Defendants made misrepresentations with conscious disregard for their truth or falsity.

53.   Phoenix reasonably and justifiably relied on these misrepresentations and suffered damages as a result.

## COUNT VI: BREACH OF CONTRACT

### (As to Giordano)

54.   Phoenix incorporates herein by reference each of its allegations contained in Paragraphs 1–53 above.

13

COMPLAINT

1    55.   At all times hereto, Phoenix and Giordano were parties to a contract.

2    56.   Giordano breached the Producer Contract by providing Phoenix false,

3  incomplete, and/or inaccurate answers in the Application, SOCI and associated

4  forms.  Further, Giordano breached the Producer Contract by delivering the Policy

5  knowing that the owner lacked an insurable interest, that the purpose of the

6  insurance was falsely stated, and that the source of funding for the Policy was falsely

7  represented.

8    57.   Phoenix has suffered damages as a direct and proximate result of

9  Giordano's breach of contract.

10                    **VI.   RELIEF REQUESTED**

11    58.   WHEREFORE, due to the above-referenced fraudulent and/or material

12  misrepresentations, negligent misrepresentation, conspiracy, and breach of contract,

13  Phoenix demands judgment against The Britt-Marie Johnson Family Insurance Trust

14  by and through it Trustee Kasra Sadr and against Kristian Giordano as follows:

15          (a)    an order declaring and adjudging the Policy of life insurance bearing

16                 Policy Number 97527973 to be null and void and rescinded, *ab initio*;

17          (b)    an order that Phoenix deposit with the Clerk of the Court all premiums

18                 paid on the Policy along with the required interest, if any;

19          (c)    an order that that the Clerk of Court return to Phoenix all of the

20                 premiums deposited with the Court or, alternatively, an order that the

21                 Clerk of the Court pay to Phoenix from the premiums deposited an

22                 amount equal to: 1) the commissions paid by Phoenix to Kristian

23                 Giordano and/or other sales agents arising out of or relating to the sale

24                 of the Policy; and 2) any damages incurred by Phoenix as a result of the

25                 Policy's issuance and subsequent investigation, including attorneys'

26                 fees and expenses;

27

28

COMPLAINT

1    (d)   an order awarding cost of suit and reasonable attorneys' fees pursuant

2          to the Federal Declaratory Judgment Statute;

3    (e)   all actual damages to which Phoenix may be entitled;

4    (f)   punitive damages due to Defendants' intentional fraud;

5    (g)   reasonable and necessary attorneys' fees and other costs incurred in this

6          action;

7    (h)   pre-judgment and post-judgment interest at the maximum lawful rate;

8    (i)   costs of court; and

9    (j)   such other and further relief as the Court deems equitable and just to

10         Phoenix.

11   Dated: March 31, 2010                    HAYNES AND BOONE, LLP

12

13                              By: _____
                                     KENNETH G. PARKER

14

15                              THOMAS F. A. HETHERINGTON
                                COURTNEY L. SCANTLIN
16                              JARRETT E. GANER
                                EDISON, McDOWELL &
17                              HETHERINGTON LLP

18                              Attorneys for Plaintiff
                                PHL VARIABLE INSURANCE CO.

19

20

21

22

23

24

25

26

27

28